UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SANDY HOWARD SIMS, | |
| Plaintiff, | Case No. 1:12-CV-00505-EJL |
| v. | MEMORANDUM ORDER |
| STEVEN ELLIS , in his official capacity as the Director of the Idaho State Office of the United States Bureau of Land Management, MIKE POOL, in his official capacity as the Acting Director of the United States Bureau of Land Management and KEN SALAZAR, in his official capacity of Secretary of the United States Department of Interior, | |
| Defendants. | |

Plaintiff Sandy Howard Sims ("Plaintiff" or "Sims") owns an operating mine known as the "Democrat Mine" conducted on patented lode mining claims located in the Salmon-Challis National Forest. (Dkt. 1, ¶3.)   On or about June 5, 1992, Plaintiff filed an application to patent seven mill site claims associated with his use of the Democrat Mine.   (*Id*., ¶¶4, 8.)   Plaintiff brings this action for review under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706, and/or writ of mandamus, 28 U.S.C. § 1361, of Defendants' processing of his mill site patent

MEMORANDUM ORDER - 1

application.   Plaintiff names as defendants Steven Ellis, Mike Pool and Ken Salazar, each in their official capacities within the Bureau of Land Management ("BLM") and/or the Department of Interior ("DOI"). Pending before this Court are Defendants' Motion to Dismiss (Dkt. 5), and Plaintiff's Motion for Summary Judgment (Dkt. 12).

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.   Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.   For the reasons explained below, Plaintiff's motion is granted in part and denied in part, and Defendants' motion is denied.

## FACTUAL BACKGROUND[1]

Plaintiff is the owner of the Democrat Mine and is the general manager of its operations.   On May 11, 1990, Sims located the following named and identified mill sites[2]:  Rosebud (IMC 159358); Alex Stephens (IMC 159359); McClellen

---

1  Unless otherwise noted, all facts are taken from Plaintiff's Complaint (Dkt. 1).

2  Mill sites are "nonmineral land … [which] is used or occupied by the proprietor … for mining or milling purposes."   30 U.S.C. § 42(a).   A "mill site is a tract of land, not to exceed five acres, on which can be placed processing facilities and other structures used to

MEMORANDUM ORDER - 2

(IMC 159360); McKinley (IMC 159361); Glendale (IMC 159362); Fairview (IMC 159363); and Jumbo (IMC 159364) (collectively referred to hereinafter as the "Mill Sites").   Sims has continuously maintained, occupied, possessed and used the Mill Sites in connection with mining and development of the Democrat Mine.   On or about June 5, 1992, Sims filed an application with the BLM to patent the Mill Sites pursuant to 43 U.S.C. §§ 29 and 42.   Plaintiff's Mill Sites patent application is identified as IDI-29284 (hereinafter the "Application.")

The BLM adjudicated the Application and no party, including the BLM, initially contested the issuance of the patent or filed an adverse claim.   (Dkt. 13, ¶3.) The BLM sent the Application to the Secretary of Interior for execution of a First Half Final Certificate on July 12, 1993.   (*Id*., ¶4)   Sims paid the statutory purchase price for the Mill Sites in March, 1993.   (*Id*., ¶5.)   The BLM accepted Sims' payment without reservation.   (*Id*.)   The Secretary of the Interior signed the First Half Final Certificate in June, 1995.   (*Id*., ¶6.)   In 1998 and 1999, a DOI mineral examiner examined the Mill Sites on several occasions.   BLM records pertaining to the Application suggest that the mineral examiner prepared a mineral report in June 2000, which presumably addressed Sims' use and occupancy of the Mill Sites.

---

support the extraction of minerals from the claim."   *Swanson v. Babbitt*, 3 F.3d 1348, 1350 (9th Cir. 1993).

MEMORANDUM ORDER - 3

However, Sims alleges the BLM never provided him with a copy of the mineral examination report.

On June 20, 2000, the BLM filed a contest proceeding ("Contest") with the DOI, alleging that the Mill Sites were not used or occupied for purposes reasonably related to operation of the Democrat Mine, and requesting that the Mill Sites be declared null and void. The parties filed a stipulation on July 18, 2002 to stay the administrative proceedings pending negotiations between Sims and the Forest Service to explore a land exchange.   (Dkt. 5-1, p. 1.)   Periodic reports were submitted to the Administrative Law Judge ("AJL") thereafter through early 2006, indicating negotiations had not yet concluded.   (*Id*., p. 2.)   On May 25, 2006, the AJL issued an Order to Show Cause and Notice of Intent to Dismiss without Prejudice.   (*Id*.)   On June 13, 2006, the parties filed a Joint Stipulation to Dismiss the Contest without Prejudice, which resulted in entry of an Order Dismissing the Proceeding without Prejudice on June 21, 2006.   (Dkt. 1-4.)   The AJL's Dismissal Order provided, "[t]he parties have been negotiating a land swap for the last several years that should resolve this contest.   In the event that ongoing settlement negotiations are not concluded successfully, the parties have agreed, consistent with established mining contest law and procedure, that this contest can then be re-filed by the Contestant."   (Dkt. 1-4.)

Following dismissal of the Contest on June 21, 2006, the BLM has not taken any action regarding the Application, and has not filed a subsequent contest.   The BLM suggests it was unaware that Sims' negotiations with the Forest Service for a land swap were unsuccessful until Sims filed the instant suit.[3]   (Dkt. 5-1, p. 3.) However, Sims suggests the BLM is barred from any further action for forfeiture of his title to the Mill Sites under 28 U.S.C. § 2462 because more than five years have passed since the BLM consented to dismissal of the Contest action.   (Dkt. 9, p. 11.)

Sims filed the instant suit on October 2, 2012, under the General Mining Law of 1872, 30 U.S.C. § 21 *et. seq.*, the APA, 5 U.S.C. §701-706, Writ of Mandamus, 28 U.S.C. § 1361, and/or Statute of Limitations, 28 U.S.C. §2462.   Sims seeks judgment directing Defendants to immediately issue patent to the Mill Sites and enjoining Defendants from initiating any action or proceeding designed to cause a forfeiture of Sims' title to the Mill Sites.

Defendants filed a Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim on December 14, 2012.   (Dkt. 5.)   While Defendants' Motion to Dismiss was pending, Sims filed a Motion for Summary Judgment.

---

3 Although the Complaint is silent with respect to Sims' negotiations with the Forest Service, that the negotiations were ultimately unsuccessful is illustrated by Sims' claim that he received a demand in 2012 from the Forest Service to halt his activities on the Mill Sites because he did not have an approved operating plan.   (Dkt. 13, ¶13.)   Sims contends there would be no surface use issues with the Forest Service if the BLM had timely issued patent to the Mill Sites.   (Dkt. 14, p. 15.)

MEMORANDUM ORDER - 5

(Dkt. 12.)   Defendants thereafter requested that the Court extend the deadline for responding to Sims' Motion for Summary Judgment until twenty-one days after the Court's ruling on Defendants' Motion to Dismiss.   (Dkt. 18.)   The Court determined it would be more efficient to consider the Motion to Dismiss in conjunction with Plaintiff's Motion for Summary Judgment, and denied Defendants' request.   (Dkt. 20.)   Defendants' Motion to Dismiss and Plaintiff's Motion for Summary Judgment have been fully briefed and are now ripe for review.

## ANALYSIS

Sims seeks an order from this Court finding that, because the BLM failed to comply with its obligation to contest Sims' patent application within a reasonable time, it forfeited its right to do so, and directing the BLM to immediately issue patent to Sims for the Mill Sites.   Defendants contend that the Court lacks subject matter jurisdiction under the APA because there has been no final agency decision from which Sims can seek judicial review; that because the Contest action was dismissed without prejudice at the request of Sims, who sought to negotiate a land exchange with the Forest Service, Sims, and not the government, delayed resolution of the patenting process; that the Secretary of the Interior's power to determine the validity of patent rights does not cease until legal title has passed, after the issuance of a

patent; and that only the Secretary of the Interior, and not the court, has the authority to issue patents.

1.   *Mining Law and the Patent Application Process*

Under the General Mining Law of 1872, 30 U.S.C. §§ 22-54 ("Mining Act"), an individual may enter and explore public lands in search of valuable minerals.   30 U.S.C. § 22.   If valuable minerals are discovered, the claimant may file a mining claim for a lode or placer claim, as well as a claim for a nearby mill site.   *Swanson v. Babbitt*, 3 F.3d 1348, 1350 (9th Cir. 1993).   Possessory interest "in a claim can be held indefinitely upon discovery of valuable mineral deposits provided that annual assessment work is performed, all necessary filings and fee payments are made, and the valuable mineral continues to exist."   *R.T. Vanderbilt Co. v. Babbitt*, 113 F.3d 1061, 1063 (9th Cir. 1997) (citation omitted).   However, if a mining claimant has an unpatented mining claim, fee title and ownership of the land remains with the United States.   *Independence Mining Co. v. Babbitt*, 105 F.3d 502, 506 (9th Cir. 1997). To obtain fee title to the land, a claimant possessing a valid mining claim may apply for a patent.[4]   *Swanson*, 3 F.3d at 1350.   "While not required, a claimant who possesses a valid mining claim may go through the application process to obtain a patent, thereby purchasing the land and minerals from the United States and

---

[4]  To obtain patent to a mill site, a claimant must follow "essentially the same process" as a mining patent claimant.   *Swanson*, 3 F. 3d at 1350.

MEMORANDUM ORDER - 7

obtaining ultimate title to them." *Byrd v. Jossie*, 2009 WL 348733, *5 (D. Or. 2009) (*citing Swanson*, 3 F.3d at 1350; *Independence Mining*, 105 F.3d at 506)).

The patent application process is governed by the Mining Act.   After an applicant files a patent application and pays the purchase price, the Secretary of the Interior issues a "First Half of mineral entry Final Certificate," (hereinafter "FHFC") which represents the DOI's administrative recording of the applicant's compliance with the initial paperwork required under the Mining Act.   *Independence Mining*, 105 F.3d at 506.   However, a patent is not issued until the DOI has determined that the claim is valid.   *Id*.   To determine whether a claim is valid, "a mineral examiner must do a field examination; collect and analyze samples; estimate the value of the mineral deposit and the cost of extracting, processing and marketing the minerals, including the costs of complying with any environmental and reclamation laws." *Id*. at 506-507.   Upon completion of the mineral report, the application undergoes legal and secretarial review.   *Id*. at 507.   If approved, a patent will then issue.   *Id*.

Notably, the right to a patent does not accrue until the claimant has filed a proper patent application, has paid the fee, and it is determined by the DOI that the mining claim is a valid claim.   *Swanson*, 3 F.3d at 1353-54; *R.T. Vanderbilt*, 113 F.3d at 1068 ("a claimholder has a right to a patent only after it has complied with the requirements that entitle it to the patent; because validity is one of the

requirements, a party's rights do not vest upon application."); *see also Independence Mining*, 105 F.3d at 508 ("no rights [in a patent claim] vest before the Secretary has decided whether to contest the patent claim."); *Cameron v. United States*, 252 U.S. 450, 460 (1920) ("so long as the legal title remains in the government it does have power, after proper notice and upon adequate hearing, to determine whether the claim is valid, and, if it be found invalid, to declare it null and void.").   Plaintiff suggests that his patent rights vested upon receipt of the FHFC and payment of the purchase price for the Mill Sites.   (Dkt. 14, pp. 2, 3, 15.)   Although some courts have held that the right to receive patent to public lands vests when the aforementioned requirements are met, *see, e.g., Cook v. United States*, 37 Fed.Cl. 435, 443 (1997), the Ninth Circuit has determined the right to a patent does not vest until the DOI has determined whether or not to contest a patent application. *Swanson*, 3 F.3d at 1354 ("Because the delay in the issuance of Swanson's patent application … resulted from the Department's challenge of the size of Swanson's mill site requests, whatever patent rights Swanson might have possessed did not vest until resolution of those claims[.]"); *Independence Mining*, 105 F.3d at 508 ("no rights can vest before the Secretary has decided whether to contest the patent claim.").   Further, as the Solicitor for the DOI has stated, under "established federal case law, the right to a mineral patent does not vest in the applicant until the

MEMORANDUM ORDER - 9

Secretary of the Interior determines that the applicant has met all the terms and conditions of the patent, including verification that the applicant effectively discovered a valuable mineral claim." *Entitlement to a Mineral Patent Under the Mining Law of 1872*, M-36990 (Nov. 12, 1997), 1997 WL 34590750 (IBLA 1997).[5] Thus, until "the issuance of the patent, the Secretary of the Interior has authority to 'review, reverse, amend, annul or affirm all proceedings in the [DOI] having for their ultimate object to secure the alienation of any portion of the public lands'...." *Marathon Oil Co. v. Lujan*, 937 F.2d 498, 501, n. 7 (10th Cir. 1991) (*quoting Knight v. United States Land Ass'n.*, 142 U.S. 161, 178 (1891)).   As the Ninth Circuit explained in *R.T. Vanderbilt*:

> We have twice rejected an argument that … the rights to the patents vest upon application ….   [N]o rights [in a patent claim] vest before the Secretary has decided whether to contest the patent claim.   *Upon confirmation that the application is proper*, equitable title is treated as having vested on the payment date.   Equitable title is not definitively acquired when payment is made.

113 F.3d at 1068 (emphasis added) (internal citations and quotation omitted).

Although Plaintiff filed the Application, provided all required documents and paid the purchase price for the Mill Sites, he has not obtained vested patent rights

---

5  The Solicitor has been granted authority by Congress over the DOI's legal work.   43 U.S.C. § 1455 (1994).   As such, the Solicitor's M-Opinions are binding on the DOI as a whole.   After an M-Opinion is completed, the DOI will take action consistent with the legal interpretation explained by the Solicitor.   *Patent Pending: Department of the Interior Administration of Mining Laws*, 46 Rocky Mountain Mineral Law Foundation Institute §16.04[2] (2000).

because the DOI has yet to confirm that the Application was valid, and, indeed, ultimately filed a contest to challenge the validity of the Application.   That Plaintiff does not have vested patent rights to the Mill Sites does not end the inquiry, however, as Plaintiff still may be entitled to relief under the APA.

2.  *Subject Matter Jurisdiction*

Defendants' primary argument, in both their Motion to Dismiss and Opposition to Plaintiff's Motion for Summary Judgment, is that the Court lacks subject matter jurisdiction because there has been no final agency action for the purposes of exhaustion of remedies, and that a final decision is required under the APA as a predicate to judicial review.   (Dkt. 5-1, p. 4; Dkt. 11, pp. 1-2; Dkt. 22, pp. 1-2.)   However, the "doctrine of exhaustion of administrative remedies is not a strict jurisdictional requirement, but rather a flexible concept which must be tailored to the circumstances of the particular case."   *State of South Dakota v. Andrus*, 614 F.2d 1190, 1192, n.1 (8th Cir. 1980) (*citing McKart v. United States*, 395 U.S. 185 (1969); *Ecology Center of Louisiana, Inc. v. Coleman*, 515 F.2d 860 (5th Cir. 1975)).     Moreover, agency inaction may be sufficiently final and ripe to permit and justify judicial review.   *Marathon Oil Co. v. Lujan*, 751 F.Supp. 1454, 1460 (D. Colo. 1990) (*aff'd in part and rev'd in part in Marathon Oil Co. v. Lujan*, 937 F.2d 498 (10th Cir. 1991)).   Federal courts have retained jurisdiction over cases where,

as here, patent applicants have sought relief under the APA, or in the nature of

mandamus relief under the Mandamus Act, 28 U.S.C. § 1361, because the DOI

failed to process a patent application. *Id.; see also* 5 U.S.C. §706(1) (a reviewing

court shall "compel agency action unlawfully withheld or unreasonably delayed.");

*Independence Mining*, 105 F.3d at 505 ("the district court had jurisdiction pursuant

to 28 U.S.C. § 1361 and 5 U.S.C. § 706(1)"); *Mt. Emmons Mining Co. v. Babbitt*,

117 F.3d 1167, 1170 (10th Cir. 1997) (determining district court's holding that

patent moratorium permitted DOI to discontinue processing mining patent

application was unlawful withholding of agency action).   Federal district courts

also retain jurisdiction under 28 U.S.C. §1331 over claims brought under the Mining

Act. *Byrd*, 2009 WL 348733, at *6.   The Court has subject matter jurisdiction under

28 U.S.C. §1331 and 5 U.S.C. §706(1).[6]

---

6 Defendants suggest if "plaintiff's argument is that the ALJ's dismissal without prejudice
is a final agency decision which could be appealed for judicial review to the District Court,
then plaintiff has failed to act timely…. Title 28 U.S.C. § 2401(a) provides in part 'a civil
action commenced against the United States shall be barred unless the complaint is filed
within six years after the right of action first accrues.'"   (Dkt. 11, p. 2.)   However,
Plaintiff does not suggest that the ALJ's dismissal constituted final agency action.
Instead, Plaintiff argues that Defendants unlawfully withheld or unreasonably delayed
agency action.   (Dkt. 9, p. 7.)   Courts have "repeatedly refused to hold that actions
seeking relief under 5 U.S.C. §706(1) to 'compel agency action unlawfully withheld or
unreasonably delayed' are time barred if initiated more than six years after an agency fails
to meet a statutory deadline."   *Wilderness Soc'y v. Norton*, 434 F.3d 584, 588 (D.C. Cir.
2006) (*quoting* 5 U.S.C. §706(1)); *see also In re United Mine Workers of America Int'l
Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) ("[b]ecause the [union] does not complain

### 3.   *Mandamus Relief and the APA*

Sims seeks mandamus relief, seeking an order that Defendants immediately issue patent to Sims for the Mill Sites.   District courts have the power "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff."   28 U.S.C. § 1361.   Courts may grant the extraordinary remedy of mandamus relief ordering an agency to act "only if the three elements of the general mandamus test are satisfied."   *Independence Mining*, 105 F.3d at 507. The three elements of the mandamus test are: "(1) the plaintiff's claim is clear and certain; (2) the [defendant official's] duty is ministerial and so plainly prescribed as to be free from doubt[7]; and (3) no other adequate remedy is available." *Oregon Natural Res. Council v. Harrell*, 52 F.3d 1499, 1508 (9th Cir. 1995) (quotation omitted). [8]   However, where, as here, review is more appropriate under the APA, the Court may elect to analyze a claim for relief under the APA, rather than under the Mandamus Act.   *Independence Mining*, 105 F.3d at 507.

---

about what the agency has done but rather about what the agency has yet to do, we reject the suggestion that its petition is untimely.").

[7] The *Independence Mining* court noted issuance of patents prior to a validity determination is not a ministerial act.   *Id*. at 508.

[8] A district court may exercise its discretion not to grant mandamus even if all three factors are met.   *Id*.

MEMORANDUM ORDER - 13

Under the APA, the reviewing court "*shall*" "compel agency action unlawfully withheld or unreasonably delayed."   5 U.S.C. § 706(1) (emphasis added).   In the context of patent claims, the Ninth Circuit has determined that, because the relief sought under a claim seeking mandamus and one seeking relief under the APA "is essentially the same," a plaintiff's entitlement to relief should be analyzed under the APA.  *Independence Mining*, 105 F.3d at 507 (noting, "we question the applicability of the traditional mandamus remedy under the [Mandamus Act] where there is an adequate remedy under the APA"); *see also R.T. Vanderbilt*, 113 F.3d at 1065 (analyzing patent claim under the APA, rather than mandamus, where there was an adequate remedy under the APA); *Mt. Emmons Mining*, 117 F.3d at 1170 (the "availability of a remedy under the APA technically precludes [plaintiff's] alternative request for a writ of mandamus[.]").   Thus, "whether defendants' duty is ministerial, which would support mandamus relief, or discretionary, which would support relief under the APA, is of no moment." *Byrd*, 2009 WL 348733, at *6.   As the Ninth Circuit has found, "at some level, the government has a general, non-discretionary duty to process the applications in the first instance.   In other words, even if the acts were discretionary, the Secretary cannot simply refuse to exercise his discretion."  *Independence Mining*, 105 F.3d at 507, n. 6; *see also Marathon Oil v. Lujan*, 937 F.2d 498, 500 (10th Cir. 1991)

MEMORANDUM ORDER - 14

(hereinafter "*Marathon Oil*") ("Administrative agencies do not possess the discretion to avoid discharging the duties that Congress intended them to perform.").[9]

In deciding whether to order relief in claims of agency delay brought under the APA, courts generally apply the six-factor test announced in *Telecomm. Research & Action Center v. F.C.C.*, 750 F.2d 70, 79-80 (D.C.Cir. 1984) (hereinafter "*TRAC*").   The *TRAC* factors include:

> (1) the time agencies take to make decisions must be governed by a 'rule of reason'[;] (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason [;] (3) delays that might be reasonable in the sphere of economic regulations are less tolerable when human health and welfare are at stake [;] (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;] (5) the court should also take into account the nature and extent of the interests prejudiced by the delay[;] and (6) the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'

*Independence Mining*, 105 F.3d at 507 n. 7 (*quoting TRAC*, 750 F.2d at 80).

a.   *Factors 1 and 2: Rule of Reason and Congressional Timetable*

Under the first *TRAC* factor, the timeliness of an agency's actions is governed by a "rule of reason."   *Id.*   The Mining Act does not provide an express timetable

---

9  In *Marathon Oil*, the Tenth Circuit held that Congress intended the DOI and BLM to process oil shale mining applications, and thus determined the district court's mandamus order compelling defendants to "'expeditiously complete administrative action' was entirely appropriate."   *Id.* (*citing Wilbur v. Krushnic*, 280 U.S. 306, 319 (1930)).

or deadline for the issuance of patents.   "At most, the statute implies that the issuance must be completed within a reasonable time, or … 'expeditiously' under the circumstances."   *Id*.; *see also Larson v. Lujan*, 976 F.Supp. 1406, 1410 (D. Utah 1992) (by enacting the mining laws, Congress placed a duty on the DOI to process mineral patent applications in a timely fashion).   The District of Columbia has noted that a "rule of reason" assumes that a decision will be made within "a reasonable time encompassing months, occasionally a year or two, but not several years or a decade."   *MCI Telecomm. Corp. v. F.C.C.*, 627 F.2d 322, 340 (D.C.Cir. 1980).   Here the DOI did not initially decide to contest Sims' Application until 2000, eight years after Sims filed the Application, seven years after Sims' payment for the Mill Sites was accepted by the BLM without reservation, and five years after the FHFC was signed by the Secretary of Interior.   (Dkt. 13, ¶¶2, 5, 6; Dkt. 1, ¶4.) Although the Contest action was dismissed without prejudice in 2006, the DOI had yet to initiate a subsequent contest six years later when Plaintiff filed this action in October 2012.   Defendants fault Sims for failing to advise them that his negotiations with the Forest Service were unsuccessful following dismissal of the Contest, and suggest Sims, and not the government, was thus responsible for delaying resolution of the patent process.   (Dkt. 5-1, p. 3; Dkt. 22, pp. 2-3, 8.) However, as Plaintiff notes, information regarding the status of the land exchange

MEMORANDUM ORDER - 16

was readily available to the Defendants, who were monitoring the exchange

negotiations.   (Dkt. 24, p. 8.)   Indeed, the Defendants' witness John Hockberger,

Senior Attorney/Advisor for the Office of the Solicitor, confirmed that he was

"assigned to custody and responsibility for monitoring the case files and status of

*United States of America v. Sandy Howard Sims*, Contest No. I-29284, following the

retirement of Kenneth Sebby, Attorney/Advisor, who handled its dismissal without

prejudice in 2006."   (Dkt. 22-1, ¶2.)   Defendants could have also ascertained the

status of the land negotiations at any time by contacting the Forest Service, the

BLM's sister agency.   Further, once Plaintiff met his obligations under 30 U.S.C. §

29, the responsibility for approving Sims' Application lay with the Defendants.

*Marathon Oil*, 937 F.2d at 501.   And, once the Contest was dismissed without

prejudice in 2006, Defendants had the responsibility to either approve the

Application or re-file the contest if the negotiations between the Forest Service and

Plaintiff proved unsuccessful.   (Dkt. 1-4.)[10]   As such, Defendants have not offered

---

10  The ALJ's Dismissal Order stated:

> The parties have been negotiating a land swap for the last several years that would resolve this contest.   In the event that ongoing settlement negotiations are not concluded successfully, the parties have agreed, consistent with established mining contest law and procedure, that this contest can then be re-filed by the Contestant.

(Dkt. 1-4.)

MEMORANDUM ORDER - 17

a salient explanation for their failure to re-file the contest action in the six year period between dismissal of the first Contest and Plaintiff's filing of the instant suit.

Moreover, on April 26, 1996, Congress enacted the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L.No. 104-134, 110 Stat. 1321 (the "Act").   Section 322(c) of the Act required the Secretary of the Interior to make a final determination regarding 90 percent of all pending patent applications, not otherwise subject to the moratorium on mining patent applications,[11] within five years of enactment, or by 2001.   Congress thus "supplied the exact timeframe within which the Secretary is required to act."   *Independence Mining*, 105 F.3d at 509.   Defendants contend that the Act "did not require BLM or Interior to act on plaintiff's patent application by a certain date….   Nowhere in [the Act] or in any appropriations act thereafter did Congress limit the Department's ability to investigate the validity of any mining claim or mill site for which a 'final determination' was not made before 2001."   (Dkt. 22, pp. 10-11.)   Defendants thus appear to argue that they could delay decision on Plaintiff's Application indefinitely,

---

11  As part of the Department of Interior and Related Agencies Appropriations Act of 1995 ("Appropriations Act"), Congress imposed a moratorium on processing patent applications, but provided a grandfather clause exempting certain pending patent applications from the moratorium.   Pub.L.No. 103-332 §112, 108 Stat. 2499, 2519 (1994). Congress has extended the moratorium and accompanying grandfather clause through the present in subsequent appropriations acts.   *R.T. Vanderbilt*, 113 F.3d at 1064. Defendants do not suggest that Plaintiff's Application was subject to the moratorium, and do not challenge Plaintiff's contention that his Application was exempted from the moratorium under the grandfather clause.

MEMORANDUM ORDER - 18

and that they could re-file the contest at any time in the future.   However, it cannot

be Congress' intent that the DOI can simply hold a patent application in perpetual

limbo by refusing to ever either approve or contest an application.

While it is clear that Plaintiff contributed to the delay in processing his patent

application when he sought to dismiss the Contest action in order to engage in land

negotiations with the Forest Service, Defendants agreed to the dismissal and were

monitoring the negotiations between Plaintiff and the Forest Service.   Defendants

have not offered any explanation to support their failure to ever re-initiate a contest

action when it became clear, as it must have at some point, that the land negotiations

between Plaintiff and the Forest Service were unsuccessful.   However, Defendants

had an explicit obligation under the Mining Act to process Plaintiff's Application.

*Independence Mining*, 105 F.3d at 507, n. 6 ("at some level, the government has a

general, non-discretionary duty to process the applications in the first instance.   In

other words, even if the acts were discretionary, the Secretary cannot simply refuse

to exercise his discretion.") (*citing Marathon Oil*, 937 F.2d at 501).   This obligation

required Defendants to either approve the Application or re-file the contest action

after the land negotiations fell through.   As Defendants have essentially been

processing Plaintiff's Application for twenty years, and have yet to issue a decision

MEMORANDUM ORDER - 19

as to the validity of the Mill Sites patent despite dismissal of the Contest in 2006, the Court finds the timing factors weigh in favor of a finding of unreasonable delay.

  *b. Factors 3 and 5: Economic harm, public welfare, and other interests*

   Plaintiff maintains that he has consistently utilized the Mill Sites in conjunction with operation of the Democrat Mine, an active mine consisting of approximately 7,000 feet of underground tunnels, stopes and raises.   (Dkt. 13, ¶¶7, 10.)   The Democrat Mine produced approximately 3,000 tons of gold, silver and lead ore between 1978 and 1990.   (*Id*.)   Approximately $1 million was spent in underground development work of the mine from 2010-2012.   (*Id*.)   In addition, extensive drilling, sampling and mapping of the underground workings of the Democrat Mine has been conducted, leading to two ore reserve studies identifying approximately 50,000 tons of proven and probable ore and 110,000 tons of inferred ore, the estimated net profit for which exceeds $300 per ton of mined ore.   (*Id*.) Sims maintains that the facilities located on the Mill Sites and being used in connection with operation of the Democrat Mine include the entrance to the mine, a railroad track from the mine to the shop, ore bin, waste dump, shop building, compressor shed, sawmill, living quarters with outhouse and drainage facility, mine access roads, water source and pipeline, storage area for equipment, ventilation pipe, water pipe and other supplies, and a vehicle parking area.   (Dkt. 9, p. 5.)

MEMORANDUM ORDER - 20

Sims has spent the last twenty years pursing patent to the Mill Sites. He

declares that he would be forced to incur hundreds of thousands of dollars to obtain

an approved operating plan from the Forest Service, and that he would not be

required to obtain Forest Service approval if Defendants had processed his patent

application within a reasonable timeframe.   (Dkt. 13, ¶¶20-25.)   Although Sims

does not need a patent in order to utilize the Mill Sites, it appears that he will incur

substantial expense if he is forced to file a new operating plan and obtain Forest

Service approval.   Sims will also suffer continued delay and uncertainty as to the

status of his patent claim if he were forced to await re-filing of Defendants' contest

action, which, if the Court did not intervene, could presumably occur years from

now or not at all.   While the harm involved here is "primarily economic harm,

rather than harm affecting the public health and welfare," Sims has a possessory

interest in the property, and he "has a right to fair administration by the BLM and the

Department of his rights under the mining law."   *Byrd*, 2009 WL 3487733, at *10

(*citing United States v. Shumway*, 199 F.3d 1093, 1099-1103 (9th Cir. 1999).

Moreover, the lengthy time Defendants have taken to process Sims' Application,

and their failure to ever either approve the Application or re-file the contest,

"undermines the public's confidence in the decision-making ability of the BLM."

*Id*. (*citing Independence Mining Co. v. Babbitt*, 885 F.Supp. 1356, 1361 (D. Nev.

MEMORANDUM ORDER - 21

1995) (five-year wait for mineral examination cannot instill public confidence in the federal government).    The Court thus finds factors 3 and 5 weigh in favor of a finding of unreasonable delay.

       *c.   Factors 4 and 6:   Competing priorities, intentional delay, and bad faith*

       The fourth *TRAC* factor provides that the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority. *TRAC*, 750 F.2d at 80 (citation omitted). Although Defendants may still be processing other pending patent applications that were not subject to the patent moratorium, it seems that there should be relatively few given Congress' mandate that the DOI make a final determination on 90% of all pending patent applications by 2001.   In addition, the FHFC has already been issued in this case, and the mineral examination report was prepared in 2000 before Defendants filed the initial Contest.   (Dkt. 13, ¶ 4; Dkt. 22, p. 7.)    Defendants also at least partially litigated the initial Contest.   As Plaintiff's Application was well into the DOI review and patent process at the time the Contest was dismissed, processing Plaintiff's Application should not unreasonably conflict with competing priorities.   The Court finds the fourth *TRAC* factor weighs in support of a finding of unreasonable delay.

Finally, the Ninth Circuit has stated that, "[w]here [an] agency has manifested bad faith, as by singling someone out for bad treatment or asserting utter indifference to a congressional deadline, the agency will have a hard time claiming legitimacy for its purposes." *Independence Mining*, 105 F.3d at 510 (*quoting In re Barr Labs.*, *Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991). There is nothing in the record to suggest Defendants singled Sims out for bad treatment. And, although Defendants have clearly missed the congressional deadline for processing 90% of exempt pending patent applications by 2001, it appears that such lapse was unintentional, as Defendants apparently believed a land exchange between Plaintiff and the Forest Service had occurred (thus mooting the need for a contest proceeding). Defendants thus cannot be said to have shown "utter indifference" to the congressional deadline.

However, the sixth *TRAC* factor states that "the court need not find any impropriety lurking behind agency lassitude in order to hold that the agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80. Further, a "finding of bad faith is not required for the court to find unreasonable delay." *Byrd*, 2009 WL 348733, at *12. Although the Court finds Defendants have not appeared to have acted in bad faith, five of the six *TRAC* factors weigh in favor of a finding of unreasonable delay. Considering the relevant factors in the totality of the circumstances, the Court finds

MEMORANDUM ORDER - 23

that Defendants have unreasonably delayed in making a decision on Sims'
Application.

Defendants imply that intervention by this Court is unnecessary because they
will initiate a contest upon dismissal of Plaintiff's complaint.   (Dkt. 22, p. 9.)
However, given that Defendants have failed to fully process Plaintiff's Application
after twenty years, including several years in contest proceedings, and failed to ever
re-file the contest in the six year period between dismissal of the initial Contest
without prejudice and the instant suit, there is no guaranty that Defendants would
ever process the Application if the Court were not to intervene.   Moreover,
permitting Defendants to simply hold patent applications in perpetuity and to initiate
contest proceedings years or even decades in the future would conflict with
Congress' mandate that the BLM process mining patent applications.   *Marathon
Oil*, 937 F.2d at 500.   Although it is unusual for a court to order an agency to take
action, the court may order such action where, as here, the circumstances so warrant.
*See Nat'l Wildlife Fed'n v. Cosgriffe*,   21 F.Supp. 2d 1211, 1219 (D. Or. 1998)
(considering *TRAC* factors and ordering BLM to prepare comprehensive
management plan by certain date) (citations omitted). Accordingly, the Court finds
that Defendants shall make a decision to either grant Sims' patent or to initiate a
contest proceeding within thirty (30) days of this Court's order.

MEMORANDUM ORDER - 24

*4.  Plaintiff's requested relief, statute of limitations and equitable arguments*

Sims requests that the Court instead order Defendants to approve his

Application, and suggests the Court should find Defendants are barred from further

challenging the validity of the patents pursuant to 28 U.S.C. § 2462 and under the

equitable doctrines of estoppel and laches.   (Dkt. 14, pp. 11-14.)   However, until

the issuance of a patent, "the Secretary of the Interior has authority to 'review,

reverse, amend, annul or affirm all proceedings in the Department [of the Interior]

having for their ultimate object to secure the alienation of any portion of the public

lands….'"   *Marathon Oil*, 937 F.2d at 501, n. 7 (*quoting Knight v. United States

Land Ass'n*., 142 U.S. 161, 178 (1891)); *see also Glen and Marie Teague*, 179 IBLA

324, 333 (2010) ("We have found no Board precedent holding, stating, or implying

that equitable title, the completion of paperwork, and/or the payment of purchase

monies creates a vested right to the patent.   The law is clear that as long as legal title

remains in the government, the Secretary has the power and duty to determine

whether a claim is valid.") (citations omitted); *Cameron v. United States*, 262 U.S.

450, 460 (1920) ("so long as legal title remains in the government it does have

power, after proper notice and upon adequate hearing, to determine whether the

claim is valid and, if it be found invalid, to declare it null and void."); *Best v.

Humboldt Mining Co*., 371 U.S. 334, 336 (1963) ("The determination of the validity

MEMORANDUM ORDER - 25

of claims against the public lands was entrusted to … the Department of Interior on its creation in 1849.").   As Congress has delegated the power to approve or deny patent applications to the Secretary of Interior, this Court is without authority to approve Sims' Application.

Plaintiff claims any further action to contest validity of the Mill Sites is barred by the five year statute of limitations provided in 28 U.S.C. § 2462.   This statute provides "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued[.]"   Plaintiff claims an action for which the right of patent has accrued is an action for forfeiture or taking of property, and that 28 U.S.C. § 2462 would accordingly bar any future contest proceedings by Defendants.   However, as the Ninth Circuit explained in *Swanson*, 3 F.3d at 1354, patent rights do not vest until resolution of any valid contest brought by the DOI.[12]   *See also, supra,* section 1 (discussing time at which patent rights vest).   Because the contest action has not been resolved on the merits,[13] Sims'

---

12  The *Swanson* court implied patent rights do not vest prior to resolution of a contest provided the contest was not brought in bad faith or to deliberately delay processing a particular application.   *Id.*   As previously discussed, Defendants have not appeared to have acted in bad faith or to have deliberately delayed processing Sims' Application.

13  A dismissal without prejudice "is a dismissal that does not 'operat[e] as an adjudication upon the merits,' and thus does not have a res judicata effect."   *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990) (*quoting* Fed. R. Civ. Proc. 41).

MEMORANDUM ORDER - 26

patent rights have not vested and a re-filed contest proceeding would not deprive Sims of a cognizable property interest.   *Id*. at 1355; *see also Byrd*, 2009 WL 438733, at *13 (the United States, as fee owner of the property, had the right to proceed with a mineral examination despite unreasonable delay in processing patent application).   The five year statute of limitations for actions involving forfeiture of property accordingly does not apply.[14]

Sims argues Defendants should be barred from further challenging the validity of his Application under the equitable doctrine of estoppel.   However, estoppel is an extraordinary remedy "especially as it relates to the public lands." *Glen and Marie Teague*, 179 IBLA at 338 (*citing Wolfram Jack Mining Corp*., 176 IBLA 183, 190 (2008)).   As such, estoppel will not be found where such finding would result in a party obtaining rights to which he is not otherwise entitled by law. *Id*. at 340 (citations omitted). Because Sims is not entitled to patent to the Mill Sites absent a validity determination by the DOI, the Court cannot find Defendants are estopped from contesting the validity of Sims' Application.

Sims also suggests Defendants are barred from contesting the validity of the Mill Sites under the equitable doctrine of laches.   Laches restricts the assertion of a

---

14  *See also Orion Reserves Ltd. Partnership v. Salazar*, 553 F.3d 697, 707 (D.C. Cir. 2009) (finding district court correctly concluded that patent applicant waived 28 U.S.C. § 2462 defense where applicant failed to raise statute of limitations defense during administrative proceedings before the DOI).

claim where deferment of action to enforce claimed rights is prolonged, inexcusable, and operates to a party's material prejudice.  *Advanced Hydraulics v. Otis Elevator Co.*, 525 F.2d 477, 479 (7th Cir. 1975).   However, when determining whether a delay in enforcing a right is unreasonable for the purposes of laches, the length of the delay is less important than the reasons for it.   *27A Am. Jur. Equity* §130 (2013). Here Defendants did not continue to process Plaintiff's Application because they believed, albeit mistakenly, that Plaintiff had entered into a land trade with the Forest Service that mooted the Application.   Although the Court ultimately determined Defendants should have realized the land negotiations were unsuccessful and re-filed the contest, Plaintiff nevertheless had some obligation to monitor the progress of his claim and "take action where it would appear to a reasonable person that no administrative resolution [would] be forthcoming."  *27A Am. Jur. Equity § 133* (2013).   Plaintiff could have notified Defendants at any time that the land negotiations had fallen through.   Had Plaintiff notified Defendants that negotiations had ceased, Defendants may have re-filed the contest or approved Plaintiff's Application years ago.   Under such circumstances, the Court cannot find Defendants are barred by laches from challenging the Application.

As the Tenth Circuit held in *Marathon Oil*, this Court would exceed its authority if it were to order the Defendants to approve the Application and issue

MEMORANDUM ORDER - 28

patent to the Mill Sites.   *Marathon Oil*, 937 F.2d at 501.   As Defendants have not yet officially determined that all conditions to the issuance of the patent have occurred, Defendants have not yet reached the point where only the purely ministerial act of issuing the patent remains.   *Id.*   "In other words, while the district court can compel the defendants to exercise their discretion, it cannot dictate how that discretion is to be exercised."   *Id.* (*citing Wilbur v. Krushnic*, 280 U.S. 306, 319 (1930); *Estate of Smith v. Heckler*, 747 F.2d 583, 591 (10th Cir. 1984)).   Thus, although the Court directs Defendants to act now and decide whether to approve or to expeditiously contest Sims' Application, it cannot simply order Defendants to approve Sims' Application.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED as follows:

1. Defendants' Motion to Dismiss (Dkt. 5) is **DENIED**.

2. Plaintiff's Motion for Summary Judgment (Dkt. 12) is **GRANTED** in part and **DENIED** in part.   Plaintiff is entitled to judgment as a matter of law finding Defendants have unreasonably delayed in completing agency action, and compelling Defendants to act on Plaintiff's Application.   Plaintiff's Motion for Summary Judgment is accordingly **GRANTED** in part.

However, Plaintiff's request for an order enjoining Defendants from further challenging his Application and his request for an order requiring Defendants to approve the Application are **DENIED**.

3. This case is closed with leave to reopen.

IT IS SO ORDERED.

DATED: September 16, 2013

Edward J. Lodge
United States District Judge